UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        v.<br><br>DAVID MIDDENDORF, et al.,<br><br>                        Defendants. | Case No. 18 Cr. 36 (JPO) |

**DAVID BRITT AND THOMAS WHITTLE'S SUPPLEMENTAL REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE JOINT
<u>MOTION TO DISMISS THE INDICTMENT</u>**

Defendants David Britt and Thomas Whittle respectfully submit this supplemental reply memorandum of law in further support of the joint motion to dismiss the indictment submitted by Defendants David Middendorf, Thomas Whittle, and David Britt.

**I.    Count Three of the Indictment Fails to Allege Conduct Constituting Wire Fraud.**

Count Three continues to fail to allege that Mr. Whittle and Mr. Britt engaged in or aided-and-abetted wire fraud in 2015. A scheme to defraud is complete once the property at issue has been misappropriated. Supp. Br. at 2-3. The Government does not dispute that premise. Instead, they simply dispute the point at which Sweet's misappropriation was complete. Opp. at 26-27.

When someone is authorized to possess information, possession of that information is not wrongful, but the use to which one puts information can be. For example, in *United States v. O'Hagan*, 521 U.S. 642 (1997), a partner at a law firm knew about a potential tender offer. *Id*. at 647. This knowledge was not wrongful, but the "self-serving use" to which he put the information—insider trading—was. *Id*. at 650, 652. For this reason, the Government is correct

that Sweet leaving the PCAOB with confidential information in his head would not be a crime—or more accurately, would not constitute misappropriation. Opp. at 27.

But that is not what Sweet did. Count Three does not allege dissemination of information Sweet had in his head when he left the PCAOB; it describes copying and disseminating detailed contents of specific documents that Sweet wrongfully took when he left. *See* Indictment ¶¶ 35-36 (Sweet showing a hard copy of the list and emailing its contents in a form "easier to use"). According to the Indictment, Sweet was not authorized to take copies of the 2015 Inspection List on his last day of work. Indictment ¶¶ 13, 30. For the unauthorized possessor, *taking* the information without authorization is the "self-serving use," *O'Hagan*, 521 U.S. at 652, because taking the information is what deprives the owner—here, the PCAOB—of its right to prevent unauthorized possession.

*United States v. Czubinski*, 106 F.3d 1069 (1st Cir. 1997), supports this conclusion. In that case, an IRS employee "carried out numerous unauthorized searches" of an IRS database. *Id*. at 1071. The defendant, unlike Sweet, did not make copies of or record the materials he viewed on his computer, nor did he take any information after his employment ended. *See id*. at 1072. The First Circuit held that browsing the database, without an "*intent to use*" the information, was not misappropriation. *Id.* at 1075-76 (emphasis added). By contrast, Sweet's copying electronic records to his personal hard drive at the end of his employment demonstrates an "intent to use" the information for his personal benefit.[1] For this reason, the 2015 List was misappropriated when Sweet copied it to his personal hard drive. Once that information was

---

[1] The Indictment does not allege that Sweet specifically intended, at the time he took the information, to give it to Defendants. But even if it did, that would not make the Defendants participants in the scheme without advance knowledge of Sweet's intent. Supp. Br. at 2-3.

2

misappropriated, no one else could participate in or aid and abet Sweet's scheme to misappropriate it from the PCAOB.

To save Count Three, the Government moves away from the 2015 Inspection List to "efforts by Sweet to solicit and obtain further confidential PCAOB information from *Holder* in or about May 2015." Opp. at 28 (emphasis added). The suggestion that Count Three could be read to encompass this conduct instead of or in addition to the 2015 Inspection List is belied by the fact that *Holder is not charged in Count Three*. Indictment ¶¶ 96-97. It is implausible that this conduct and not the 2015 Inspection List was the basis for the grand jurors' indictment on Count Three; this new theory fails to ensure that the Defendants are "tried on the evidence presented to the grand jury." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000).

Further, these factual allegations have nothing to do with Mr. Britt or Mr. Whittle. Mr. Britt is not alleged to have been involved in any efforts to encourage Sweet to obtain further information, let alone to have even been aware of them. And although the Indictment alleges that Sweet told Mr. Whittle about certain conversations he had with Holder after the fact, it does not allege that Mr. Whittle encouraged Sweet to solicit information from Holder or that Sweet relayed anything identifying audits that would be inspected in 2015. Indictment ¶ 50(c)-(d) (alleging that Sweet relayed to Whittle statements by Holder that related to then-ongoing inspections); *id.* ¶ 52 (alleging that Sweet relayed to Whittle a statement by Holder that an already scheduled inspection was being canceled).

Because the Indictment fails to "state some fact specific enough to describe a particular criminal act" with respect to Mr. Britt and Mr. Whittle, Count Three fails as to them. *Pirro*, 212 F.3d at 93. And because the Indictment describes independent acts by the Defendants but no interactions between the three of them related to encouraging the obtaining and disclosure of

3

confidential information, Count Three fails to allege that the three participated in any unified scheme to defraud with Sweet. Supp. Br. at 4-5.

For all of these reasons, Count Three of the Indictment fails to state an offense.

## II. The Government's Opposition Does Not Accurately Represent the Indictment's Factual Allegations Relevant to Count Three.

The Government's opposition brief also materially misstates several allegations in the Indictment. First, the Government claims that "Middendorf, Whittle, and Britt made clear to Sweet that his loyalty and value of KPMG depended on his ability to provide such inside information." Opp. at 9. This is not accurate with respect to Mr. Britt. The Indictment alleges two instances in which Middendorf and Whittle, in conversations to which Mr. Britt is not alleged to have been privy, discussed Sweet's loyalty and value to KPMG. Indictment ¶¶ 33-34. The Indictment does not allege that Mr. Britt had any such conversation with Mr. Sweet. *Id.* ¶¶ 32-41.

Second, the Government also claims that "Middendorf, Whittle, and Britt encouraged Sweet to disclose confidential PCAOB information at their meeting on May 4, 2015." Opp. at 28. This is not accurate with respect to Mr. Britt or Mr. Whittle. The Indictment alleges only that Mr. *Middendorf* asked Sweet at this welcome lunch which KPMG engagements would be subject to inspection that year. Indictment ¶ 32. Indeed, the Indictment does not allege that Mr. Whittle even attended the lunch. *Id.*

Third, the Government claims that "[u]pon Sweet's arrival at KPMG, Middendorf, Whittle, and Britt immediately began pumping Sweet for confidential inspection information." Opp. at 9; *see also id.* at 25-26. This is not accurate with respect to Mr. Britt. While Mr. Middendorf and Mr. Whittle are alleged to have asked Sweet for confidential information in his first week of work, Mr. Britt is not alleged to have done so. Indictment ¶¶ 32-37. Instead, Mr.

4

Britt is alleged to have "discussed engagements on the 2015 List" with Sweet in mid-June 2015, more than a month after Sweet's arrival at KPMG. Indictment ¶ 38. But the Indictment notably does not allege that Mr. Britt initiated the discussion by soliciting information. *Id.* Mr. Britt did send a follow-up email for information Sweet indicated he would have to check his "notes" for, Indictment ¶ 39, but this confirms that Mr. Britt did not initiate Sweet's alleged disclosures.

Fourth, the Government claims that "Middendorf, Whittle, and Britt encouraged Sweet … to obtain additional confidential PCAOB information in violation of the duties of confidentiality of Holder, Wada, and other PCAOB colleagues." Opp. at 25-26. While the Indictment describes Sweet sharing information with Mr. Britt and Mr. Whittle, nowhere does it allege that they encouraged Sweet to obtain additional confidential information during the time relevant to Count Three. *See* Indictment ¶¶ 38-39, 42(b), (c).

Taking the facts as alleged in the Indictment rather than in the opposition, *see Pirro*, 212 F.3d at 92 ("[T]he indictment must be considered as it was actually drawn, not as it might have been drawn."), it is clear that Count Three fails to state an offense as to Mr. Whittle and Mr. Britt.

| | |
|---|---|
| Dated:  May 24, 2018<br>          New York, New York | Respectfully submitted,<br><br>/s/ Robert M. Stern<br>Melinda Haag (*pro hac vice*)<br>Robert M. Stern<br>Matthew R. Shahabian<br>Alyssa Barnard<br>  ORRICK, HERRINGTON &<br>SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, New York 10019<br>Tel: (212) 506-5000<br>mhaag@orrick.com<br><br>*Attorneys for Defendant David Britt*<br><br>/s/* Bradley J. Bondi<br>Bradley J. Bondi<br>Nola B. Heller<br>Sean P. Tonolli (*pro hac vice*)<br>  CAHILL GORDON & REINDEL LLP<br>80 Pine Street<br>New York, NY  10005<br>Tel: (212) 701-3000<br>bbondi@cahill.com<br><br>*Attorneys for Defendant Thomas Whittle*<br><br>*Signed with the consent of counsel |

6