UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    v.

DAVID MIDDENDORF, et al.,

                 Defendants.

Case No. 18 Cr. 36 (JPO)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT DAVID BRITT'S MOTION TO COMPEL RULE 16, *BRADY*, AND**
<u>**OTHER DISCOVERY**</u>

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................1

LEGAL STANDARD..................................................................................................................2

ARGUMENT ..............................................................................................................................5

I.   This Court Should Order the Production of All Discovery to Which Mr. Britt Is Entitled
Under Rule 16 and *Brady*. ..................................................................................................5

   A.  The Government Is Obligated to Produce Information in its Physical Possession..............5

      1.  Opinions from Individuals that Changes Were Appropriate or Immaterial .................5

      2.  Opinions from Individuals that They Did Not Believe the Law Was Violated............6

      3.  Communications, Including Interview Memoranda and Agent and Attorney
Notes, with the SEC, PCAOB, KPMG, and Their Employees.....................................8

      4.  Attorney Proffers ........................................................................................................9

      5.  Lack of Involvement in Obtaining Inspection Lists ..................................................10

      6.  Discovery Provided to Other Defendants ..................................................................11

      7.  PCAOB Resources Expended on Inspections............................................................11

      8.  KPMG "Crisis" ...........................................................................................................12

      9.  SEC Views on Audit Quality.....................................................................................12

      10. Intent to Defraud the SEC.........................................................................................13

      11. Contents of Mr. Britt's Cellphone ............................................................................13

      12. Expert Disclosures ...................................................................................................14

   B.  The Government Is Obligated to Search SEC Files for Rule 16 Discovery and
*Brady* Material. ....................................................................................................................15

   C.  The Government is Obligated to Search PCAOB Files for Rule 16 Discovery and
*Brady* Material. ....................................................................................................................16

II.  This Court Should Order The Government to Review *Giglio* Material for Possible Early
Disclosure. ..........................................................................................................................18

III. This Court Should Order the Production of a Bill of Particulars.............................................19

CONCLUSION..........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
    373 U.S. 83 (1963)..................................................................................1, 2

*Bryan v. United States*,
    524 U.S. 184 (1998)....................................................................................7

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010)..................................................................................16

*Giglio v. United States*,
    405 U.S. 150 (1972)..................................................................................1, 2

*Kyles v. Whitley*,
    514 U.S. 419 (1995)..................................................................................2, 4

*Maslenjak v. United States*,
    137 S. Ct. 1918 (2017)...............................................................................6

*Tanner v. United States*,
    483 U.S. 107 (1987)...................................................................................6

*United States v. Antone*,
    603 F.2d 566 (5th Cir. 1979) .....................................................................5

*United States v. Avellino*,
    136 F.3d 249 (2d Cir. 1998).......................................................................4

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987)......................................................................20

*United States v. Bryan*,
    868 F.2d 1032 (9th Cir. 1989) ...........................................................4, 15, 16

*United States v. Coppa*,
    267 F.3d 132 (2d Cir. 2001).................................................................3, 18

*United States v. Espinal*,
    96 F. Supp. 3d 53 (S.D.N.Y. 2015) ...........................................................18

*United States v. Gupta*,
    848 F. Supp. 2d 491 (S.D.N.Y. 2012)..............................................4, 5, 15, 16, 17

*United States v. Holihan*,
  236 F. Supp. 2d 255 (W.D.N.Y. 2002) ........................................................4, 9, 12

*United States v. Martoma*,
  990 F. Supp. 2d 458 (S.D.N.Y. 2014) ........................................................4, 15, 16

*United States v. Ojeikere*,
  No. 03 CR 581JGK, 2005 WL 425492 (S.D.N.Y. Feb. 18, 2005) .........................14

*United States v. Rittweger*,
  524 F.3d 171 (2d Cir. 2008) .......................................................................3, 9, 12

*United States v. Rodriguez*,
  496 F.3d 221 (2d Cir. 2007) ............................................................3, 4, 9, 12, 18

*United States v. Santiago*,
  46 F.3d 885 (9th Cir. 1995) ...................................................................................4

*United States v. Shakur*,
  543 F. Supp. 1059 (S.D.N.Y. 1982) ......................................................................5

*United States v. Stevens*,
  985 F.2d 1175 (2d Cir. 1993) ................................................................................2

*United States v. Triumph Capital Grp., Inc.*,
  544 F.3d 149 (2d Cir. 2008) ..............................................................................2, 9

*United States v. Ulbricht*,
  858 F.3d 71 (2d Cir. 2017) .......................................................................2, 7, 9, 13

*United States v. Upton*,
  856 F. Supp. 727 (E.D.N.Y. 1994) ........................................................................4

*United States v. Wey*,
  No. 15-CR-611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ......................18

*United States v. Wilson*,
  493 F. Supp. 2d 364 (E.D.N.Y. 2006) ..................................................................20

**Statutes**

18 U.S.C. § 371 .......................................................................................................16

18 U.S.C. § 3500 ....................................................................................................3, 4

**Other Authorities**

Fed. R. Crim. P. 7(f) ..............................................................................................19

iii

Fed. R. Crim. P. 16(a)(1)(B) ........................................................................................13

Fed. R. Crim. P. 16(a)(1)(E)(i) ................................................................................ *passim*

Fed. R. Crim. P. 16(a)(1)(E)(ii) .............................................................................11, 12

Fed. R. Crim. P. 16(a)(1)(E)(iii) ..................................................................................13

Fed. R. Crim. P. 16(a)(1)(G) ........................................................................................14

Fed. R. Crim. P. 16(a)(2) ................................................................................................3

Fed. R. Crim. P. 26.2(f) ..................................................................................................3

Local Criminal Rule 16.1 ...............................................................................................2

2 Leonard B. Sand et al., Modern Federal Jury Instructions ........................................7

**INTRODUCTION**

Review of the materials produced by the Government reveals that the Government has taken an improperly restrictive view of its discovery obligations.  In some cases, it appears that the Government has failed to look in places likely to have discoverable information.  Defendant David Britt, through counsel, has identified documents and categories of documents which he knows, or suspects, to be in the Government's possession and requested production of those documents.  Although the Government has provided limited information in response, it continues to withhold materials to which Mr. Britt is entitled and has declined to search the files of its joint investigatory partners for discoverable material.  With trial mere months away, Mr. Britt moves to compel the Government to produce Rule 16, *Brady*, and other material to which he is entitled, as well as to search Securities and Exchange Commission ("SEC") and Public Company Accounting Oversight Board ("PCAOB") files for the same.  Mr. Britt also moves to compel the early production of certain *Giglio* information, as well as a bill of particulars.

**BACKGROUND**

On May 4, 2018, counsel, on behalf of Mr. Britt, requested discovery to which he is entitled under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, *Giglio v. United States*, and other relevant law.  *See* Declaration of Melinda Haag ("Haag Decl.") Ex. 1.  On June 1, 2018, Mr. Britt received a letter response from the Government.  Ex. 2.  Although the response contained limited *Brady* information, the Government refused to provide numerous categories of discoverable material which it incorrectly contended it had no obligation to provide.  On June 4, 2018, counsel sent a second letter requesting additional discoverable information.  Ex. 3.  This letter was based on numerous factual representations made at oral argument on the pending motion to dismiss about which Mr. Britt has received no discovery to date, including the alleged costs associated with the PCAOB inspection process.  In light of the close proximity to the June

8, 2018 pretrial motions deadline, counsel requested a response by June 6, 2018.  The Government has yet to respond.

Despite these attempts to confer with the Government in compliance with Local Criminal Rule 16.1, no agreement has yet been reached.  Mr. Britt's codefendants, David Middendorf, Thomas Whittle, and Cynthia Holder, also sent letters to the Government requesting Rule 16, *Brady*, and other information, and also received unsatisfactory responses.[1]  Mr. Britt joins in those requests to the extent he has not done so already, as well as the related motions, Dkt. Nos. 79, 85, including any other discovery motions to be filed by his codefendants.

## LEGAL STANDARD

The Government's discovery obligations are governed, in large part, by Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963).  Rule 16 requires the Government to produce certain enumerated categories of information, including evidence "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  "Evidence is material if it 'could be used to counter the government's case or to bolster a defense.'"  *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)).  Similarly, under *Brady* and its progeny, the Government must disclose evidence favorable to an accused when such evidence is material to guilt or punishment because it is exculpatory or impeaching.  *Brady*, 373 U.S. at 87-88; *Kyles v. Whitley*, 514 U.S. 419, 432-440 (1995); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  This obligation extends to exculpatory statements communicated by a witness's lawyer.  *United States v. Triumph Capital*

---

[1] Counsel for Mr. Middendorf sent letters to the Government on February 5, 2018 (response February 13, 2018) and March 27, 2018 (response June 1, 2018); counsel for Ms. Holder sent letters to the Government on February 5, 2018 (response February 13, 2018) and May 17, 2018 (response June 1, 2018), the latter on behalf of Ms. Holder, Mr. Middendorf, Mr. Whittle, and Mr. Britt; and counsel for Mr. Whittle sent a letter to the Government on May 17, 2018 (response June 1, 2018).

*Grp.*, 544 F.3d 149, 157 (2d Cir. 2008).  It also extends to unrecorded statements of a witness

that are favorable to an accused.  *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007).

Internal government memoranda and notes are not ordinarily discoverable under Rule

16(a)(2).  And discovery of certain witness statements is exempted from Rule 16 and instead

governed by the Jencks Act, 18 U.S.C. § 3500.  Under the Act, after a witness testifies at trial,

the government must produce witness "statements," defined in relevant part as:

> (1) a written statement made by said witness and signed or otherwise
> adopted or approved by him; [or]
>
> (2) a stenographic, mechanical, electrical, or other recording, or a
> transcription thereof, which is a substantially verbatim recital of an
> oral statement … recorded contemporaneously with the making of
> such oral statement[.]

18 U.S.C. § 3500(e); *see also* Fed. R. Crim. P. 26.2(f).[2]  Although under the terms of the Jencks

Act the Government may withhold witness "statements" and produce them after the witness

testifies, in practice, unless there are witness safety concerns, the Government generally

produces witness statements, broadly defined, in advance of trial.  *See e.g. United States v.*

*Coppa*, 267 F.3d 132, 146 n.12 (2d Cir. 2001).  In the instant case, despite the narrow definition

of witness "statements" in the Jencks Act, it appears, since none have been produced to date, that

the Government is withholding all witness interview memoranda as Jencks material.

Even if material is a Jencks "statement" or an internal government memorandum,

however, the Government's discovery obligations are not eliminated.  If a "statement" or

Government notes contain exculpatory or impeaching information, such information must be

disclosed.  *See, e.g., United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008)

("Complying with the Jencks Act, of course, does not shield the government from its

---

[2] The Government can also invoke a procedure set forth in the Jencks Act to withhold portions of
witness statements it considers irrelevant.  18 U.S.C. § 3500(b)-(d).

independent obligation to timely produce exculpatory material under *Brady*—a constitutional

requirement that trumps the statutory power of 18 U.S.C. § 3500."); *Rodriguez*, 496 F.3d at 225-

226.  Similarly, if notes contain information material to the defense that has been requested

under Rule 16(a)(1)(E), that *information*, if not the underlying statement or notes, should be

disclosed.  *See, e.g., United States v. Holihan*, 236 F. Supp. 2d 255, 264 (W.D.N.Y. 2002).

The Government's obligations under Rule 16 apply to any information "within the

government's possession, custody, or control."  *E.g.,* Fed. R. Crim. P. 16(a)(1)(E).  This "inquiry

is not whether the United States Attorney's Office physically possesses the discovery material;

the inquiry is the extent to which there was a 'joint investigation' with another agency" that

possesses the information.  *United States v. Upton*, 856 F. Supp. 727, 750 (E.D.N.Y. 1994); *see

also United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995) (citing *United States v. Bryan*,

868 F.2d 1032 (9th Cir. 1989)).  The Government's *Brady* obligation is similar; it "has a duty to

learn of any favorable evidence known to the others acting on the government's behalf in the

case."  *Kyles*, 514 U.S. at 437; *accord United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.

1998).  Whether the Government has a duty to review materials in the possession of another

agency for *Brady* material is determined by whether the Government conducted a "joint

investigation" with that other agency.  *United States v. Gupta*, 848 F. Supp. 2d 491, 493

(S.D.N.Y. 2012).

> [W]hether parallel investigations are also 'joint' investigations must
> be evaluated in light of the disclosures being requested, and when it
> comes to *Brady* disclosures, the relevant context is one of fact-
> gathering, not charging determinations or otherwise.  For *Brady*
> purposes, it is enough that the agencies are engaged in joint fact-
> gathering, even if they are making separate investigatory or charging
> decisions, because the purpose of *Brady* is to apprise the defendant
> of exculpatory evidence obtained during the fact-gathering that
> might not otherwise be available to the defendant.

*Id.* at 494; *see also United States v. Martoma*, 990 F. Supp. 2d 458, 460-62 (S.D.N.Y. 2014).

While the Government's discovery obligations most often extend to federal agencies, they can also extend to entities outside of the federal government.  *Gupta*, 848 F. Supp. 2d at 493; *see also United States v. Antone,* 603 F.2d 566, 570 (5th Cir. 1979) (*Brady* violation for failing to produce information held by state police); *United States v. Shakur*, 543 F. Supp. 1059, 1060 (S.D.N.Y. 1982) (ordering Government to search records of local District Attorney's Office).

## ARGUMENT

I.  **This Court Should Order the Production of All Discovery to Which Mr. Britt Is Entitled Under Rule 16 and *Brady*.**

The Government has taken an impermissibly narrow view of its discovery and *Brady* obligations in this case.  In certain instances, it has not disclosed information to which Mr. Britt is entitled.  In other instances, it has entirely failed to review its files, as well as the files of its joint investigatory partners, for discoverable information.  Mr. Britt respectfully requests that this Court order the Government to disclose the materials described herein and to search its files and the files of its joint investigatory partners for additional discoverable information.

A.  **The Government Is Obligated to Produce Information in its Physical Possession.**

Many of the items Mr. Britt requested and to which he is entitled under Rule 16 and *Brady* are, or are suspected to be, in the Government's physical possession.

1.  **Opinions from Individuals that Changes Were Appropriate or Immaterial**

Mr. Britt requested production of conclusions conveyed by KPMG or opinions expressed by any individuals to the Government that changes made to the relevant audit work papers in 2016 were consistent with the relevant accounting rules, immaterial, non-substantive, and/or nonexistent.  Ex. 1 at 9.  An element of the *Klein* conspiracy charge against Mr. Britt is proving

an agreement to target a fraud at the SEC.  *Tanner v. United States*, 483 U.S. 107 (1987).

Although the theory of fraud vis-à-vis the SEC is not clear from the Indictment, *see* Dkt. No. 57

at 15-20, the Indictment alleges that the goal of the conspiracy was "to fraudulently affect

PCAOB inspection outcomes."  Indictment ¶ 91.  It is difficult to see how it would be possible to

fraudulently affect inspection outcomes by making immaterial, non-substantive, and/or

nonexistent changes.  *Cf. Maslenjak v. United States*, 137 S. Ct. 1918, 1925 (2017).  And making

changes consistent with relevant accounting rules tends to rebut any alleged intent to defraud.

Evidence showing that the changes contemplated were consistent with the relevant

accounting rules, immaterial, non-substantive, and/or nonexistent rebuts the Government's

claims, bolsters Mr. Britt's defense, and is exculpatory.  The Government is thus obligated to

produce such information if it exists.  And the Government has acknowledged that such

information exists.  The Government conceded in its June 1, 2018 response to Mr. Britt's

discovery letter that no fewer than four KPMG employees (Jennifer Lauer, Peter Torrente, Chris

Brown, and Diana Kunz) "expressed the view that changes made to audit work papers in 2016

were not substantive."  Ex. 2 at 3.  That was the extent of the Government's disclosure; it did not

provide any additional information in support of this conclusory statement.  Mr. Britt and the

other Defendants are entitled to more information on this issue than the Government provided,

and Mr. Britt therefore joins Mr. Whittle's Motion to Compel Particularization and Production of

*Brady* Material, filed on June 8, 2018.

### 2. Opinions from Individuals that They Did Not Believe the Law Was Violated

Mr. Britt requested all accounts of witnesses expressing a view that they did not believe

that they or anyone else had violated the law, or had otherwise done anything wrong.  Ex. 1 at

10.  Mr. Sweet's plea colloquy on January 5, 2018 is an example of such:

> THE COURT: When you committed these acts, did you know that
> they were illegal and in violation of the law?
> THE DEFENDANT: I did not have an understanding of that at the
> time, your Honor, but I do understand that now.

*See* Ex. 4, Transcript of Plea Allocution, *United States v. Sweet*, No. 18 Cr. 8 (JPO) (S.D.N.Y.

Jan. 5, 2018), at 21:19-22.

At trial, the Government must prove beyond a reasonable doubt that Mr. Britt acted

willfully, meaning that he acted "with an intent to do something the law forbids; that is to say,

with bad purpose."  2 Leonard B. Sand *et al*., Modern Federal Jury Instructions: Criminal,

Instruction 44–3, 44-5 (describing willfulness as an element of wire fraud and defining the term);

*see also Bryan v. United States,* 524 U.S. 184, 191 n.13 (1998) (citing this definition of

willfulness with approval).  Sworn testimony from Mr. Britt's alleged coconspirator, and the

unquestionable leader of the alleged conspiracy, that when committing the charged conspiracies

he did not understand those acts to be illegal negates proof of willfulness on everyone's part.

Mr. Sweet was apparently not alone in believing his conduct was not wrongful.  From the

Government's search warrant applications, it appears that Mr. Sweet provided certain PCAOB

information to Dabie Tsai on at least one but possibly multiple occasions.  Ex. 5 ¶¶ 45(c), 59-62.

As presented in the search warrant applications, Ms. Tsai appears to see nothing wrong with

receiving and using information from Mr. Sweet and expresses her gratitude via email.  *Id*. ¶ 62.

The fact that Mr. Sweet provided other individuals at KPMG with PCAOB information is both

material to Mr. Britt's defense and exculpatory, as it tends to rebut the Government's claim that

Mr. Britt acted willfully and bolsters his defense that, like all of these other individuals who

received and used PCAOB information whom the Government has not charged with wire fraud,

he did not intend to do something the law forbids.  *Ulbricht*, 858 F.3d at 109.

Indeed, in its June 1, 2018 letter, the Government conceded that no fewer than nine individuals (John Atkinson, Dabie Tsai, Jennifer Lauer, Jennifer Stemple, Peter Torrente, Scott Henderson, Thomas Garton, Christopher Van Voorhies, and William O'Leary) "indicated that they were aware, to varying extents, of Brian Sweet's and/or KPMG's possession of confidential PCAOB information … and did not realize or think such conduct was criminal, or believed such conduct was okay … or did not believe the information was confidential."  Ex. 2 at 2-3.  Again, the Government has not provided any additional detail or documentation evidencing this conclusory statement.  Mr. Britt again joins Mr. Whittle's June 8, 2018 discovery motion and requests that the Court order the Government to produce the substance and underlying factual information in its possession supporting these individuals' views that the conduct at issue in this case was not wrongful, as well as the accounts of any other witnesses expressing a belief that they or others did not violate the law.

### 3.  Communications, Including Interview Memoranda and Agent and Attorney Notes, with the SEC, PCAOB, KPMG, and Their Employees

Mr. Britt requested communications on factual matters between the Government and the SEC, PCAOB, KPMG and their employees containing information material to the defense under Rule 16 or exculpatory under *Brady*.  Ex. 1 at 8-9.  For example, communications among the Government and the SEC and the PCAOB, as well as interviews with employees of the same, may have discussed factual matters such as the nature and extent of the SEC's relationship to the PCAOB, particularly with respect to KPMG.  Such information is critical to the Government's (albeit flawed) *Klein* conspiracy theory that the Defendants' alleged scheme to affect PCAOB inspection results had an impact on some unidentified SEC function.  The SEC, PCAOB, and their employees may have also provided the Government with information about policies relevant to the SEC's relationship with the PCAOB.  Evidence tending to show that the SEC's

interaction with the PCAOB is negligible, that the SEC does little with PCAOB inspection reports, or that the SEC does not take any adverse action against public accounting firms with poor PCAOB inspection results undercuts the Government's argument that the alleged conspiracy was targeted at the SEC, rendering it both material to the defense and exculpatory. *Ulbricht*, 858 F.3d at 109.  Similarly, KPMG and its employees may have provided the Government with information that is exculpatory or material to Mr. Britt's defense.

Some of these communications may be in writing, while others may be memorialized in agent or attorney notes or memoranda.  The Government has produced no witness interview memoranda or notes to date, and appears to be withholding all of them for now under the Jencks Act, despite the narrow definition of "statement" in the Act.  Mr. Britt requests that the Court order the Government to review its witness interview memoranda and agent and attorney notes from communications with the SEC, PCAOB, KPMG, and their employees and produce any material discoverable under Rule 16 or *Brady*, keeping in mind the narrow definition of a Jencks Act statement and the Government's obligation to produce the contents of notes, if not the notes themselves, when notes contain discoverable information.  *Rittweger*, 524 F.3d at 181 n.4; *Rodriguez*, 496 F.3d at 225-226; *Holihan*, 236 F. Supp. 2d at 264.

### 4.    Attorney Proffers

Mr. Britt has reason to believe that the Government received attorney proffers from counsel for various witnesses in this case.  Mr. Britt has requested notes and memoranda from all attorney proffers containing information exculpatory as to Mr. Britt.  *See* Ex. 1 at 6; *Triumph Capital Grp.*, 544 F.3d at 161-165 (undisclosed notes from an attorney proffer were crucial to the defense).  For example, attorney proffers may be materially inconsistent with someone's prior account to KPMG or the PCAOB.  Attorney proffers might also contradict Mr. Sweet's and the Government's version of events and therefore be exculpatory.  For instance, following Mr.

Britt's May 4, 2018 request, the Government informed counsel that "[i]n meetings with the
Government (and via attorney proffer), George Hermann has stated, in substance and in part, that
on one occasion in or about March 2016, David Middendorf said he didn't know how the list
came about or if it was authentic, and that on or about February 4, 2017, in a phone call with
David Britt, Britt told Hermann that Britt had received from Brian Sweet a list of approximately
50 engagements to be inspected in the upcoming inspection cycle and was upset." Ex. 2 at 2.
Mr. Britt requests that the Court order the Government to review *all* attorney proffer notes and
produce all discoverable material from that review.

**5.      Lack of Involvement in Obtaining Inspection Lists**

Mr. Britt requested any information in the Government's possession that Mr. Britt was
not involved in obtaining inspection lists from the PCAOB, which would include evidence that
Mr. Britt did not know in advance that lists had been obtained from the PCAOB and information
that Mr. Sweet, Ms. Holder, and Mr. Wada were working together and on their own to obtain the
lists.  As Mr. Britt has argued, a scheme to defraud is complete once the property to be obtained
is misappropriated.  Dkt. Nos. 58, 83.  If Mr. Britt lacked advance knowledge of a plan to
misappropriate information, he could not have joined any scheme to misappropriate that
information after the fact.  *See id.*  As a result, any information showing that Mr. Britt was not
aware of the misappropriation of PCAOB information until after it was arguably complete is
exculpatory and critical to his defense.  Mr. Britt requests that the Court order the Government to
search its files, including its interview and other notes, as well as the files of the SEC and
PCAOB, *see* §§ I.B and I.C, *infra*, and produce any evidence tending to show that Mr. Britt
lacked advance knowledge of Mr. Sweet's plans to misappropriate PCAOB information.

10

### 6. Discovery Provided to Other Defendants

To the extent the Government produced different sets of discovery to different defendants, Mr. Britt requested that the Government review the discovery provided to other defendants but not Mr. Britt for information material to preparing Mr. Britt's defense and *Brady* material.  Ex. 1 at 6-7.  This is necessary to ensure that the Government did not take an impermissibly narrow view of materiality when preparing each defendant's discovery.  Accordingly, Mr. Britt requests that the Court order the Government to review the discovery provided to other defendants but not to Mr. Britt for information material to preparing his defense and *Brady* material.

### 7. PCAOB Resources Expended on Inspections

After oral argument on the motion to dismiss, Mr. Britt requested production of all evidence supporting the Government's statements about the resources the PCAOB devotes to its inspections, including the contention that it cost the PCAOB in excess of $500,000 to generate its inspection list and in excess of $200,000 to recreate the list after the discovery of the alleged fraud.  May 31, 2018 Tr. at 44-45.  Counsel for Ms. Holder made a comparable request after the Government made a similar, albeit less specific, representation in the Government's opposition brief.  Dkt. No. 74 at 37-39; Haag Decl. ¶ 14.

No information regarding the resources devoted to the PCAOB inspections generally or the expense of creating inspection lists specifically was included in the Indictment and no discovery has been produced to date detailing expenses involved in creating the lists.  Evidence supporting such claims is discoverable as data the Government intends to use in its case-in-chief at trial.  Fed. R. Crim. P. 16(a)(1)(E)(ii).  It is also material to preparing Mr. Britt's defense.  Fed. R. Crim. P. 16(a)(1)(E)(i).  This evidence is also necessary to allow the Defendants to test the Government's valuation.  Accordingly, Mr. Britt requests that the Court order the Government to

produce evidence underlying the Government's representations relating to the resources devoted

to the PCAOB inspection list, including but not limited to the time and expense involved in the

creation and recreation of the PCAOB's inspection lists.  Such evidence should include the

factual contents of any notes or internal memoranda addressing the PCAOB resources expended

on inspection targets.  *Rittweger*, 524 F.3d at 181 n.4; *Rodriguez*, 496 F.3d at 225-226; *Holihan*,

236 F. Supp. 2d at 264.  Mr. Britt similarly requests that the Court order the Government to

produce evidence underlying the Government's representations that "the PCAOB's confidential

selection information was of financial value … in the hands of the KPMG employees who

wrongfully obtained it."  Dkt. No. 74 at 37.

### 8. KPMG "Crisis"

After oral argument, Mr. Britt also requested production of all evidence supporting the

Government's statements that "KPMG was facing a crisis" and "performing twice as poorly in

PCAOB inspections as its competitor firms."  May 31, 2018 Tr. at 32-33.  Evidence related to

these claims is material, indeed essential, to Mr. Britt's defense.  It may also be data the

Government intends to use at trial.  Fed. R. Crim. P. 16(a)(1)(E)(ii).  Mr. Britt requests that the

Court order the Government to produce any such information.

### 9. SEC Views on Audit Quality

After oral argument, Mr. Britt also requested production of all evidence supporting the

Government's statements that:

> I think the SEC's response at trial, when we talked to them about the
> impact of this, is the fact that one audit was improved for one issuer
> is really not the goal, it's to ensure that the auditing program at
> KPMG, and other auditors like KPMG, actually have integrity and
> actually have quality and can assure that future inspections and
> future audits of public companies are in fact properly done.

May 31, 2018 Tr. at 35-36.

The SEC's institutional views on the audit inspection process and its "goals" are essential to Mr. Britt's ability to mount an effective defense and are consequently material to preparing the defense under Fed. R. Crim. P. 16(a)(1)(E)(i).  Mr. Britt requests that the Court order the Government to produce such information.

### 10.    Intent to Defraud the SEC

After oral argument, Mr. Britt also requested production of all evidence supporting the Government's statements that "one of the motives of the scheme at issue was to defraud the SEC with respect to its oversight of the accounting industry, the financials, and its review of PCAOB inspection rules."  May 31, 2018 Tr. at 39-40.  Mr. Britt requests all materials supporting this proposition as material to preparing his defense.  Fed. R. Crim. P. 16(a)(1)(E)(i).

### 11.    Contents of Mr. Britt's Cellphone

Mr. Britt requested that the Government complete the production of data obtained from his cellphone.  Ex. 1 at 2.  Mr. Britt's phone contains his own statements, discoverable under Fed. R. Crim. P. 16(a)(1)(B), and is also "an item … obtained from or belong[ing] to the defendant" and its contents are thus discoverable under Fed. R. Crim. P. 16(a)(1)(E)(iii).  Finally, the contents of Mr. Britt's phone are likely to aid in countering the Government's case or in bolstering Mr. Britt's defense and are thus material to preparing his defense under Fed. R. Crim. P. 16(a)(1)(E)(i).  *Ulbricht*, 858 F.3d at 109.

Although Mr. Britt received some content from his cellphone on February 7, 2018, the Government represented during the March 15, 2018 status conference that the production from the Defendants' cellphones was incomplete.  Haag Decl. ¶ 13.  The Government represented that it produced additional data from Mr. Britt's cellphone by way of a letter received by Mr. Britt on May 14, 2018, but technical issues have prevented counsel from being able to upload the production to a secure review platform in a way that ensures the integrity of the data is

preserved.  Haag Decl. ¶ 13.  The Government has not responded to requests to confirm that the

May 14, 2018 production contained all of the information from Mr. Britt's cellphone.  Haag

Decl. ¶ 13.  Mr. Britt requests that the Court order the Government to produce any remaining

data from Mr. Britt's cellphone, in a manner he can actually access and review, forthwith.  The

Government has represented that the technical issues have been cured by a new production

received today.  Haag Decl. ¶ 13.  Counsel will withdraw this request if it can confirm that the

new production contains all content from Mr. Britt's cellphone.

### 12.  Expert Disclosures

Mr. Britt requested production of a summary of any expert testimony the Government

plans to elicit.  Ex. 1 at 2.  This includes any person currently or formerly employed by the SEC

or the PCAOB to be called for the purpose of providing expert testimony, as well as any expert

witness called to opine regarding the KPMG work papers at issue in this matter.  Production of

such information is required under Fed. R. Crim. P. 16(a)(1)(G).  The Government contends that

it "will provide expert disclosure sufficiently in advance of calling any expert witness at trial."

Ex. 2 at 1.  While Rule 16(a)(1)(G) has "no specific timing requirements," the parties are

expected to comply "in a timely fashion."  Advisory Committee Notes to 1993 Amendment to

Fed. R. Crim. P. 16; *see also United States v. Ojeikere*, No. 03 CR 581JGK, 2005 WL 425492, at

*8 (S.D.N.Y. Feb. 18, 2005).  In light of the technical nature of the auditing issues in this case,

early disclosure of expert opinions may be necessary to permit Mr. Britt to have his own experts

review and effectively rebut the conclusions of the Government's experts.  If the Government is

currently aware of expert testimony it will offer at trial, there is no reason to delay required

disclosures.  At minimum, Mr. Britt requests that the Court order the Government to review the

expert testimony it plans to elicit and produce Rule 16(a)(1)(G) disclosures sufficiently early to

permit Mr. Britt to prepare rebuttal expert testimony.

**B.     The Government Is Obligated to Search SEC Files for Rule 16 Discovery and
        *Brady* Material.**

Mr. Britt has understood since at least June 2017 that the Government was coordinating

its investigation jointly with the SEC, Ex. 6 at 4, and the SEC announced the initiation of

enforcement proceedings against the Defendants on January 22, 2018, the same day the

Indictment was unsealed, Exs. 7, 8.  Consequently, Mr. Britt believes that the Government

engaged in joint fact-gathering with the SEC.  Notably, the Government did not deny this as a

factual matter in its response to Mr. Britt's discovery request.  Ex. 2 at 2.  In fact, the

Government essentially concedes that this is the case, as it acknowledges that representatives

from the SEC attended the Government's witness interviews.  Ex. 2 at 2; *see also Gupta*, 848 F.

Supp. 2d at 493-94 (the fact that the U.S. Attorney's Office and the SEC jointly interviewed

witnesses illustrates "joint fact-gathering").

The Government nevertheless claims, in conclusory fashion, that Mr. Britt's request that

the Government search the SEC files for *Brady* and Rule 16 material is "unfounded and

meritless."  Ex. 2 at 2.  It is neither.  Courts in this district have repeatedly required the

Government to review SEC files for *Brady* material where the Government and the SEC engaged

in joint fact-finding, and particularly joint interviews.  *Gupta*, 848 F. Supp. 2d at 493-94;

*Martoma*, 990 F. Supp. 2d at 461.  The same rule has been applied to Rule 16 materials.  *See*

*Bryan*, 868 F.2d at 1036.  That the SEC allegedly did not take *contemporaneous* notes of the

witness interviews in which it participated, Ex. 2 at 2, does not mean that there is no *Brady* or

Rule 16 material to which Mr. Britt is entitled in the SEC's files.

Because the Government and the SEC engaged in a joint fact-gathering endeavor, the

Government is obligated to search for and produce all discoverable material maintained by the

SEC. *Gupta*, 848 F. Supp. 2d at 494; *Martoma*, 990 F. Supp. 2d at 461; *Bryan*, 868 F.2d at

1036.  In particular, Mr. Britt requests that the Court order the Government to search for:

> 1.  All SEC policies, procedures, memoranda, or any other documents that describe the extent and nature of the SEC's relationship with the PCAOB, in particular with regard to KPMG and annual inspection reports.
>
> 2.  All annual inspection reports maintained by the SEC reflecting the PCAOB's inspections of KPMG.
>
> 3.  All communications amongst SEC employees and between the SEC and KPMG with respect to the February 2016 meeting between the SEC and KPMG, documents reflecting the substance of that meeting, and the same with respect to any additional meetings between the SEC and KPMG employees following that meeting.
>
> 4.  All SEC emails containing exculpatory information as to Mr. Britt or information otherwise material to the preparation of his defense.
>
> 5.  All interview notes or memoranda with SEC personnel.
>
> 6.  All evidence that relates to the Government's statements at the motion to dismiss hearing that "KPMG was facing a crisis" and "performing twice as poorly in PCAOB inspections as its competitor firms."  May 31, 2018 Tr. at 32-33.

Ex. 1 at 7.

Such information is key to the Government's charge under 18 U.S.C. § 371, but despite

its obvious relevance and the Government's invocation of many of these topics at oral argument,

the Government has not provided discovery underlying its various assertions.  That this

information may be maintained in SEC files rather than the Government's files is no excuse for

the Government's failure or refusal to produce it.

### C.    The Government is Obligated to Search PCAOB Files for Rule 16 Discovery and *Brady* Material.

As the Defendants explained in their recent motion to dismiss briefing, *see* Dkt. No. 82 at

1, the PCAOB "is the regulator of first resort and the primary law enforcement authority for a

vital sector of our economy," public company accounting.  *Free Enter. Fund v. Pub. Co.*

*Accounting Oversight Bd*., 561 U.S. 477, 508 (2010).  From the Government's search warrant applications, Mr. Britt understands that the PCAOB conducted an investigation parallel to that conducted by the Government and SEC and shared the results of that investigation with the Government.  *See* Ex. 5 ¶¶ 3, 8, 30.  And again, the Government's response to Mr. Britt's discovery letter did not deny as a factual matter that the Government engaged in a joint fact-finding effort with the PCAOB.  Ex. 2 at 2.  In fact, it appears as though the Government relied substantially on the PCAOB to conduct the PCAOB side of the investigation.  Apparent gaps in documents originating from the PCAOB lead counsel for Mr. Britt to believe that the Government did not conduct a fulsome investigation of the PCAOB's files.

"A 'joint investigation' … does not require a coterminous investigation."  *Gupta*, 848 F. Supp. 2d at 495 (rejecting the argument that because the SEC investigation began before the Government's investigation, there was not joint fact-gathering).  Permitting the Government to engage in a joint fact-finding effort with the PCAOB without triggering discovery obligations with respect to PCAOB files would thwart the purpose of both Rule 16 and *Brady* and deprive defendants of potentially material and exculpatory evidence in the PCAOB's files.  *See id*. at 494.  Mr. Britt requests that the Court order the Government to search PCAOB files for:

1. All PCAOB policies, procedures, memoranda, or other documents that describe the extent and nature of the SEC's relationship with the PCAOB, in particular with regard to KPMG and annual inspection reports.

2. All evidence concerning whether the PCAOB took steps to protect the confidentiality of its KPMG inspection lists, and if so, what steps it took.

3. Memoranda summarizing interviews with current or former PCAOB employees regarding this matter.

4. All PCAOB emails or other electronic or hard copy files containing exculpatory information as to Mr. Britt or information otherwise material to the preparation of his defense under Fed. R. Crim. P. 16(a)(1)(E)(i).  For instance, if there are PCAOB emails showing that Mr. Sweet, Ms. Holder, and Mr. Wada acted alone

17

or in conjunction with one another to obtain the inspection lists, without Mr. Britt's knowledge, such information should be produced. Further, if there are PCAOB emails evidencing the motives of Mr. Sweet, Ms. Holder, and Mr. Wada in obtaining the inspection lists (such as incentives to be hired by KPMG or Mr. Wada's anger towards his employer), such information should be produced.

**II.**   **This Court Should Order The Government to Review *Giglio* Material for Possible Early Disclosure.**

Certain impeachment information may need to be disclosed now in order for Mr. Britt to make effective use of it in his defense. *See Coppa*, 267 F.3d at 146 n.12 (describing the early disclosure of impeachment information as a "salutary practice"). "[T]he district court retains authority to order earlier disclosure of *Giglio* material as appropriate under the circumstances." *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *23 (S.D.N.Y. Jan. 18, 2017). Such information must be produced "in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously." *Id*. (quoting *Rodriguez*, 496 F.3d at 226). Where information "require[s] … independent investigation to use it effectively at trial," early disclosure is warranted. *Id*. (quoting *United States v. Espinal*, 96 F. Supp. 3d 53, 66 (S.D.N.Y. 2015)).

The following types of evidence, for example, may require further investigation by defense counsel and should be produced sooner rather than later:

1.  Government notes and memoranda memorializing attorney proffers that contain statements inconsistent with a witness's prior or anticipated testimony. Ex. 1 at 6.

2.  Contradictory information referenced in the Government's July 21, 2017 warrant affidavit. Ex. 1 at 10; Ex. 5 ¶ 29 n.2 ("[I]n certain cases, the description of events attributed to a particular witness varies from, or is contradicted by, the account attributed to another witness.").

3.  All statements by current and former PCAOB employees that Mr. Sweet lied to them and failed to disclose that he was attempting to gather confidential information from them during lunches, dinners, and drinks. Ex. 1 at 11-12.

4.  Accounts by current and former KPMG employees that Mr. Sweet misled them by making it appear that he had insights based on his expertise and experience at

18

the PCAOB when in fact he had obtained PCAOB information himself and from current and former PCAOB employees.  Ex. 1 at 12.

5. Accounts by former KPMG employee George Herrmann that contradict the Government's theories.  Ex. 1 at 12.  The Government recently informed Mr. Britt of two such instances, Ex. 2 at 2, but it is unclear whether there are more.

6. Information related to Mr. Sweet's inconsistent statements to the Court regarding his state of mind.

7. Information, including copies of Mr. Sweet's 2014 and 2015 federal income tax returns, related to the Court's statement during Mr. Sweet's guilty plea that "two weeks prior to the date of sentencing you agreed to file with the IRS and provide copies to the office accurate amended tax returns for the years 2014 and 2015 and will pay or will enter into an agreement to pay past taxes due and owing by you to the Internal Revenue Service including applicable penalties, if any."  *See* Ex. 4, Transcript of Plea Allocution, *United States v. Sweet*, No. 18 Cr. 8 (JPO) (S.D.N.Y. Jan. 5, 2018), at 14:2-8.

The Government contends that impeachment material requested in Mr. Britt's May 4, 2018 letter will be produced "at the same time as Jencks Act material, which will be sufficiently in advance of trial to make effective use of such material."  Ex. 2 at 2.  In light of the potential need for additional investigation, however, Mr. Britt requests that the Court order the Government to review potential impeachment material for the purpose of determining whether any such information requires further investigation and should be produced to the Defendants forthwith.

### III.    This Court Should Order the Production of a Bill of Particulars.

Mr. Britt joins his codefendants' motions for a bill of particulars and requests that the Court order the Government to provide a bill of particulars identifying the wire transmissions and false representations it intends to rely upon at trial, unindicted coconspirators, and "other duties" referenced in the Indictment.  Dkt. Nos. 79, 84-86.

Mr. Britt also requests additional information.  Ex. 1 at 13-18.  Federal Rule of Criminal Procedure 7(f) authorizes a bill of particulars to allow a defendant "to identify with sufficient

19

particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  The provision of a bill of particulars is necessary to ensure that defendants do not waste time "confront[ing] numerous documents unrelated to the charges pending" and that "[t]he relevance of key events" is not "shrouded in mystery."  *Id.* at 575.  "Judges … have characterized the test" for a bill of particulars "as one of necessity" addressing whether information is "necessary to apprise the defendant of the charges against him with sufficient precision" and permit him to defend himself. *United States v. Wilson*, 493 F. Supp. 2d 364, 369 (E.D.N.Y. 2006) (citation omitted).

A bill of particulars on the following items is necessary to permit Mr. Britt to effectively understand and mount a defense to the Government's charges.

1.      The Indictment alleges that "re-reviews occasionally uncovered significant problems with an audit … and/or resulted in the performance of additional audit work." Indictment ¶ 72.  The Indictment then lists *examples of* additional audit work it alleges was performed.  Mr. Britt requests that the Court order the Government to specify all instances of additional audit work that the Government will rely upon at trial.  This information is critical to obtain in advance of trial because of the need for Mr. Britt and his codefendants' expert witnesses to review the audit work papers related to any alleged changes of this kind.  It further bears on the Government's allegations regarding the scope of the alleged conspiratorial agreement.

2.      The Indictment alleges that the SEC uses PCAOB inspection reports "to carry out its regulatory, oversight, and enforcement functions."  Indictment ¶ 11.  The Indictment further alleges that Mr. Britt and others knew that such reports were used "by the SEC to perform its oversight and regulatory functions."  Indictment ¶¶ 27, 91.  Relatedly, the Indictment alleges that

"[n]egative inspection results carry various consequences for accounting firms." Indictment ¶ 11. Mr. Britt requests that the Court order the Government to identify the regulatory, oversight, and enforcement functions for which the SEC utilizes the PCAOB inspection reports, as well as the "various consequences of negative inspection results." Both are crucial aspects of the Government's *Klein* conspiracy case and Mr. Britt cannot defend himself effectively or rebut the Government's allegations without knowledge of what SEC function or negative consequences the Government alleges were implicated.

3.      The Indictment alleges that in May 2015, Ms. Holder "advised Sweet that KPMG should do a pre-review of a particular audit because it was likely to be inspected by the PCAOB." Indictment ¶ 50(b). Similarly, the Indictment alleges that in May 2015, Ms. Holder was conducting an inspection of a KPMG audit and sought Mr. Sweet's advice as to whether a comment should be written, Indictment ¶ 50(c), and that she was involved in another discussion about a different inspection, Indictment ¶ 50(d). The Court should order the Government to identify the particular audit and inspections referenced.

4.      The Indictment alleges that Mr. Wada provided Ms. Holder with confidential information about two different issuers between August 2015 and March 2016. Indictment ¶ 58. The Court should order the Government to identify the two issuers referenced in paragraphs 58(a) and 58(b), as this information is necessary to mount a defense and permit Mr. Britt and any expert to evaluate the relevant audit work papers.

5.      The Indictment alleges that the Defendants conspired to defraud the United States by agreeing to misappropriate and use "confidential information from the PCAOB." Indictment ¶ 91. The Defendants understand that the confidential information at issue in this case is the PCAOB inspection lists from 2015, 2016, and 2017. The Court should order the Government to

identify whether any other confidential information is alleged to be within the subject of a conspiratorial agreement or scheme.

## CONCLUSION

For the foregoing reasons, Mr. Britt respectfully requests that the Court grant the relief requested herein.


Dated:  June 8, 2018     Respectfully submitted,
   New York, New York

        /s/ *Melinda Haag*_____
        Melinda Haag (*pro hac vice*)
        Robert M. Stern
        Matthew R. Shahabian
        Alyssa Barnard
         ORRICK, HERRINGTON &
        SUTCLIFFE LLP
        51 West 52nd Street
        New York, NY  10019
        Tel: (212) 506-5000
        mhaag@orrick.com

        *Attorneys for Defendant David Britt*