Ja3dbrip                    Plea

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                          18 Cr. 0036(JPO)

5   DAVID BRITT,

6              Defendant.

7   ------------------------------x

8
                                          October 3, 2019
9                                         2:36 p.m.

10
    Before:
11
                        HON. J. PAUL OETKEN,
12
                                          District Judge
13
                        APPEARANCES
14
    GEOFFREY S. BERMAN
15       United States Attorney for the
         Southern District of New York
16   BY:   JORDAN LANCASTER ESTES
           MARGARET GRAHAM
17         MARTIN BELL
              Assistant United States Attorneys
18

19   ORRICK, HERRINGTON & SUTCLIFFE, LLP
         Attorneys for Defendant David Britt
20   BY:   ROBERT M. STERN
              – and –
21   SEWARD & KISSEL LLP
     BY:   RITA MARIE GLAVIN
22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ja3dbrip                    Plea

1          THE CLERK:  This is in the matter of the United States

2    of America against David Britt.

3          Starting with the government, counsel please state

4    your name for the record.

5          MS. ESTES:  Good afternoon, your Honor.  Jordan Estes,

6    Margaret Graham and Martin Bell for the government.

7          THE COURT:  Good afternoon.

8          MR. STERN:  Good afternoon, your Honor.  Robert Stern,

9    with Orrick, Herrington & Sutcliffe, for Mr. Britt, with Rita

10   Glavin of Seward & Kissel.

11         THE COURT:  Good afternoon.

12         MR. STERN:  Thank you, your Honor.

13         THE COURT:  Mr. Britt, I have been informed that you

14   wish to plead guilty to Count Two of the Indictment, conspiracy

15   to commit wire fraud.  Is that correct?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  If you would pull the -- you don't have to

18   stand up.

19         MR. STERN:  Your Honor, if I may just for one second?

20         THE COURT:  Yep.

21         MR. STERN:  Following the Court's decision on

22   September 9th denying Mr. Middendorf and Mr. Wada's post-trial

23   motions, we have had an opportunity to review with Mr. Britt

24   the developments in this case since his arraignment.  We have

25   gone back through with him the Court's decision denying his

Ja3dbrip                    Plea

1   motion to dismiss.  We've gone back over the jury instructions

2   the Court had provided in the United States v. Middendorf and

3   Wada trial.  And we went through with him the most recent

4   motion -- most recent decision denying the post-trial motions.

5   And in light of those recent developments, along with the very

6   unique circumstances that could flow to Mr. Britt resulting

7   from a conviction at trial, he would like to change his plea.

8            THE COURT:  OK.  And that's pursuant to a plea

9   agreement with the government, is that correct?

10           MR. STERN:  It is, your Honor.

11           THE COURT:  All right.

12           So, Mr. Britt, I have been informed that you wish to

13   plead guilty, as your counsel has stated, to Count Two; is that

14   correct?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Before accepting your plea, I am going to

17   ask you a number of questions, and the purpose for that is so

18   that I can establish that you wish to plead guilty because you

19   are in fact guilty of this charge and not for some other

20   reason.  If you do not understand any of my questions or if you

21   would like to take a break to speak with your counsel at any

22   point, just let me know.

23           Please place the defendant under oath.

24           THE CLERK:  Mr. Britt, will you please stand and raise

25   your right hand.

Ja3dbrip                         Plea

1          (The defendant was sworn)

2          THE COURT:  Mr. Britt, you are now under oath, and

3    that means if you answer any of my questions falsely, your

4    answers could be used in a prosecution for perjury.  Do you

5    understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And what is your full name?

8          THE DEFENDANT:  David Charles Britt.

9          THE COURT:  And how old are you, sir?

10         THE DEFENDANT:  I'm 56.

11         THE COURT:  How far did you go in school?

12         THE DEFENDANT:  I went to university.

13         THE COURT:  And where was that?

14         THE DEFENDANT:  In Sidney, Australia.

15         THE COURT:  And have you ever been treated or

16   hospitalized for any mental illness?

17         THE DEFENDANT:  No, your Honor.

18         THE COURT:  And have you recently been or are you now

19   under the care of a psychiatrist or a doctor?

20         THE DEFENDANT:  No, your Honor.

21         THE COURT:  Have you ever been hospitalized or treated

22   for addiction to drugs or alcohol?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  And in the past 24 hours, have you taken

25   any drugs, medicine, or had any alcohol?

Ja3dbrip                     Plea

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  And is your mind clear today?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And as far as you understand, have you had

5    a sufficient opportunity to talk to your lawyers about the

6    purpose of this proceeding?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Does either counsel have any doubt as to

9    the defendant's competence to plead at this time?

10          MS. ESTES:  No, your Honor.

11          MR. STERN:  No, your Honor.

12          THE COURT:  Based on his responses to my questions and

13    his demeanor as I observe it, I find that the defendant is

14    competent to enter a plea of guilty at this time.

15          Mr. Britt, have you had a sufficient opportunity to

16    discuss your case with your lawyers, including the specific

17    charge you intend to plead guilty to, any possible defenses,

18    and the consequences of pleading guilty?

19          THE DEFENDANT:  Yes, your Honor, I have.

20          THE COURT:  And are you satisfied with your attorneys'

21    representation of you?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  I am now going to explain certain

24    constitutional rights that you have.  You give up these rights

25    when you plead guilty, so I just want to make sure that you

Ja3dbrip                    Plea

1    understand them.

2            Under the Constitution and laws of the United States,

3    you are entitled to a speedy and public trial by a jury on the

4    charges in the Indictment.  Do you understand that?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  At that trial you would be presumed

7    innocent, and the government would be required to prove you

8    guilty by competent evidence and beyond a reasonable doubt

9    before you could be found guilty.  You would not have the

10   burden of proving that you were innocent, but a jury of twelve

11   people would have to agree unanimously that you were guilty in

12   order for you to be convicted at trial.

13           Do you understand that?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  At that trial and at every stage of your

16   case, you would be entitled to be represented by an attorney,

17   and if you could not afford one, one would be appointed to

18   represent you.  Do you understand that?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  During a trial the witnesses for the

21   government would have to come to court and testify in your

22   presence, and your lawyer could cross-examine the witnesses for

23   the government, object to evidence offered by the government,

24   and, if you desired, issue subpoenas, offer evidence, and

25   compel witnesses to testify on your behalf.  Do you understand

Ja3dbrip                    Plea

1    that?

2              THE DEFENDANT:  Yes, I do, your Honor.

3              THE COURT:  At a trial, although you would have the

4    right to testify if you chose to, you would also have the right

5    not to testify, and no inference or suggestion of guilt could

6    be drawn from the fact that you did not testify, if that is

7    what you chose.  Do you understand that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Also, if you were convicted at a trial,

10   you would have the right to appeal that verdict to the Court of

11   Appeals.  Do you understand?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Even at this time as you are entering this

14   plea, you do have the right to continue to plead not guilty and

15   have a trial.  Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  And if you plead guilty and I accept your

18   plea, you will be giving up your right to a trial and the other

19   rights I have just described.  There will be no trial, but I

20   will enter a judgment of guilty on this count and then sentence

21   you later on the basis of that guilty plea, which becomes a

22   conviction.  Do you understand that?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And if you plead guilty, you will have to

25   give up your right not to incriminate yourself because I will

Ja3dbrip                          Plea

 1   ask you about what you did to satisfy myself that you are in

 2   fact guilty.  Do you understand that?

 3              THE DEFENDANT:  Yes, your Honor.

 4              THE COURT:  You previously received a copy of the

 5   Indictment containing the charges against you?

 6              THE DEFENDANT:  I did, your Honor.

 7              THE COURT:  And you understand the nature of the

 8   charges?

 9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  I will ask counsel for the government if

11   you would please state the elements of the offense in Count

12   Two?

13              MS. ESTES:  Yes, your Honor.

14              So for consistency sake, we will use the elements from

15   your Honor's jury instructions, noting that we had initially

16   objected to "willfully" being included as an element, and we

17   would in connection with the prior trial preserve any

18   objections in that regard now.

19              So there are two elements to Count Two:  First, that

20   the conspiracy charged in Count Two of the Indictment existed,

21   that is, there was an agreement or understanding to commit the

22   unlawful object of the charged conspiracy; and, second, that

23   the defendant knowingly and willfully became a member of that

24   alleged conspiracy during the applicable time period.

25              Now, as to the underlying elements of wire fraud,

Ja3dbrip                        Plea

those are:  First, that there was a scheme or artifice to

defraud or to obtain money or property by false or fraudulent

pretenses, representations, or promises; second, that the

defendant knowingly and willfully participated in the scheme or

artifice to defraud with knowledge of its fraudulent nature and

with specific intent to defraud; third, that in execution of

that scheme the defendant used or caused the use of interstate

wires; and, finally, that any false or fraudulent

representation related to a material fact or matter.

THE COURT:  Thank you.

I also want to explain the penalty under the law.

First of all, under the statute, the maximum possible penalty

on this count is 20 years' imprisonment.  There is a maximum

fine of the greatest of $250,000 or twice the total monetary

loss from the offense or twice the monetary gain to you from

the offense.  And there is a $100 special assessment, which is

mandatory, and a maximum term of supervise release of three

years.

Supervised release means that you are subject to

monitoring when you are released from any term of

incarceration.  And there are terms and conditions of

supervised release that you must comply with, and if you fail

to comply with them, you can be returned to prison without a

jury trial.

Also, do you understand that the Court will order you

Ja3dbrip                      Plea

1    to make restitution to the PCAOB in an amount the Court will

2    determine?

3             THE DEFENDANT:  Yes, your Honor.

4             THE COURT:  Are you a United States citizen?

5             THE DEFENDANT:  No, your Honor.

6             THE COURT:  OK.  Have you had a chance to talk to your

7    lawyers about any immigration consequences?

8             THE DEFENDANT:  Yes, your Honor.

9             THE COURT:  All right.  Is there anything -- are there

10   any issues that I need to question the defendant about with

11   respect to that?

12            MS. ESTES:  Yes, your Honor.

13            We would ask -- and your Honor can do this now or in

14   connection with the plea agreement later, but that the

15   defendant be allocuted on the paragraph of the plea agreement

16   on page 4, where he acknowledges that it is likely that he

17   could be removed from the United States given his guilty plea.

18            THE COURT:  You understand that a conviction of a

19   felony such as this can have an effect on -- can have

20   immigration consequences, in particular, it would make it

21   likely that you would be removed from the United States?

22            THE DEFENDANT:  Yes.  Yes, I do, your Honor.

23            THE COURT:  OK.

24            MS. ESTES:  And, your Honor, one other part of that:

25   We would ask that your Honor allocute the defendant on his

Ja3dbrip                    Plea

 1    agreement in the plea agreement that he waives his right to

 2    withdraw his guilty plea based on any actual or adverse

 3    immigration consequences that come later.

 4           THE COURT:  OK.  You understand that under the

 5    agreement, you are voluntarily waiving your right to withdraw

 6    your plea based on any adverse immigration consequences?

 7           THE DEFENDANT:  Yes, your Honor, I do.

 8           THE COURT:  OK.  If your attorney or anyone has

 9    attempted to predict or tell you what your sentence is likely

10    to be, I want to explain that I am the one who is going to

11    determine your sentence.  I am not doing that now, but I'll do

12    that in a few months, after considering any written submissions

13    from the parties as well as a presentence report that the

14    Probation Department will prepare and then can consider the

15    Sentencing Guidelines as well as any possible variances or

16    departures from those and then ultimately consider what an

17    appropriate sentence is for you under the statute, 18 U.S.C.

18    Section 3553(a).  Do you understand that?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  And even if your sentence is different

21    from what anyone had told you or what you expect, you will

22    still be bound by your guilty plea and will not be allowed to

23    withdraw that plea.  Do you understand that?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Has anyone threatened you or forced you to

Ja3dbrip                        Plea

plead guilty?

          THE DEFENDANT:  No, your Honor.

          THE COURT:  And did you sign this plea agreement

today?

          THE DEFENDANT:  Yes, I did.

          THE COURT:  Before you signed it, did you have a

chance to read it completely?

          THE DEFENDANT:  Yes, I did, your Honor.

          THE COURT:  And you discussed it with your lawyers?

          THE DEFENDANT:  Yes, I did.

          THE COURT:  Do you feel you understand everything that

is in the agreement?

          THE DEFENDANT:  Yes, I do, your Honor.

          THE COURT:  And is there any side agreement or any

separate understanding or agreement you have with the

government that has been left out of this?

          THE DEFENDANT:  No, your Honor.

          THE COURT:  OK.  Under the agreement there is what's

called a stipulated guideline range, which is 27 to 33 months'

imprisonment, and a guideline fine range of $10,000 to

$100,000.  That stipulated guideline range is binding on the

government and on you because this is an agreement, but it is

not binding on me and I will make my own calculation of the

guidelines.

          You do have the right, through your lawyers, to ask

1    for a sentence that is outside that guideline range.  There is

2    no mandatory minimum under the statute of this case.  But you

3    are giving up your right to appeal or challenge your sentence

4    as long as I sentence you to 33 months or less in prison.  That

5    is within or below the guideline range.

6              Do you understand that?

7              THE DEFENDANT:  Yes, I do, your Honor.

8              THE COURT:  OK.  So having gone through this colloquy,

9    do you still wish to plead guilty pursuant to this agreement?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Would you please tell me in your own words

12   what you did that makes you believe you are guilty of Count

13   Two.

14             THE DEFENDANT:  Yes.

15             In or about 2016, while working in Manhattan, Brian

16   Sweet told me that he received information concerning which of

17   our accounting firm's clients were going to be inspected by the

18   PCAOB as part of their annual inspection process.  Mr. Sweet

19   said that the information came from another person at the

20   PCAOB.  And while I was suspicious that he could obtain this

21   kind of information, I did not press him about the source and

22   propriety of possessing or using the information.

23             Specifically in March of 2016, Mr. Sweet, my superiors

24   and I agreed to devote resources to reviewing the audit

25   workpapers to those clients identified.  We did this by

Ja3dbrip                          Plea

arranging by email and telephone calls for Mr. Sweet and others
to gain access to the workpapers.  This was done to facilitate
a review of the audit workpapers with the intention of ensuring
the documentation's accuracy in the event that those clients
were ultimately inspected by the PCAOB.

      I also participated in additional discussions about
similar information in 2017.

      I understood at that time that possessing and using
this kind of information presented significant headline and
reputational issues for myself and my firm because the conduct
was unethical and in that sense wrong.  I never believed,
however, that my conduct was unlawful.  I never asked or
encouraged Mr. Sweet to get information from the PCAOB, nor was
I privy to his plans to retain this information.  Nevertheless,
Mr. Sweet, my superiors and I did use the information after
Mr. Sweet obtained it.

      I should never have done that.  I should have raised
my hand higher, sooner, and sooner than February 2017.  In
fact, I should have raised my hand as high as necessary in
2016.

      This episode is not how I have lived my professional
and personal life over the past 30 years.  I am disappointed in
myself, and I apologize to my wife and children, family, KPMG,
and my former colleagues, and anyone else that has been hurt by
my actions.

Ja3dbrip                     Plea

1          THE COURT:  I would like to ask counsel for the

2    government if you believe there is a sufficient factual basis

3    for a guilty plea?

4          MS. ESTES:  Your Honor, I'm not sure if this was

5    clear.  I would ask that the Court allocute the defendant on

6    whether he knew this was confidential PCAOB information.

7          THE COURT:  OK.  Did you know in 2016, in 2017 that

8    the information you are referring to that was used was

9    confidential PCAOB information?

10          MR. STERN:  Your Honor, may we have a moment?

11          THE COURT:  Yes.

12          (Pause)

13          MR. STERN:  Thank you, your Honor.

14          THE DEFENDANT:  Mr. Sweet told me that the information

15    came from someone at the PCAOB.  If that information had proved

16    to be accurate, it would have been confidential, yes.

17          THE COURT:  And when he told you it was from someone

18    at the PCAOB, did you assume and believe that it was therefore

19    confidential?

20          THE DEFENDANT:  Mr. Sweet told me that he didn't know

21    where it came from; he believed it came from someone at the

22    PCAOB and he didn't know who that was.  I had my suspicions but

23    I didn't prompt him.  If it turned out to be the actual list,

24    it would have been confidential.

25          (Pause)

Ja3dbrip                      Plea

1              MS. ESTES:  Your Honor, I don't think we think this is

2    sufficient right now.  Maybe it makes sense to take a small

3    break.

4              MR. STERN:  Actually, I think we can fix it.

5              THE COURT:  OK.

6              (Pause)

7              THE DEFENDANT:  Given that the information did prove

8    to be accurate, I understand that it was confidential

9    information.

10             THE COURT:  Did you understand at the time that it was

11   confidential information?

12             THE DEFENDANT:  I learned in 2016 that it was

13   confidential, so yes.

14             THE COURT:  Confidential PCAOB information?

15             THE DEFENDANT:  Confidential PCAOB information.

16             MS. ESTES:  Your Honor, I think we need to know when

17   in 2016.  Was it during the course of acting on the

18   information?  Using the information?

19             THE COURT:  Do you want to take a minute?

20             (Pause)

21             MR. BELL:  Your Honor, may we?

22             THE COURT:  Yes.

23             (Counsel conferred)

24             MS. GLAVIN:  Your Honor, we are ready to proceed.

25             THE COURT:  OK.  Good.

Ja3dbrip                    Plea

1          THE DEFENDANT:  While I had my doubts when I first

2     learned of the information, I came to understand that it was

3     confidential information while using it in June of 2016.

4          THE COURT:  While using it?

5          THE DEFENDANT:  While using it.

6          THE COURT:  And when you say "using it," am I correct

7     that you are talking about using it to go back to the

8     workpapers on those that you had thought would be inspected?

9          THE DEFENDANT:  It was used to go back and review

10    those works earlier than that, but at this point I hadn't

11    reported it beyond what I had initially done.  I didn't raise

12    it up further with --

13         THE COURT:  So could you tell me, when did you come to

14    believe that it was confidential PCAOB information?

15         THE DEFENDANT:  In June of 2016.  That's when I

16    learned that the list was real, when we saw the inspections

17    coming in as matching up to what Brian had said they would.

18         MS. ESTES:  Your Honor, I still don't think we're at a

19    point where this is sufficient.  I would suggest a break where

20    we can discuss further.

21         MR. STERN:  Your Honor, I'm not sure I understand the

22    concern any more, but if Ms. Estes would like to confer, I am

23    happy to do that.

24         MS. ESTES:  Your Honor, from our perspective, there

25    was an agreement in March 2016, when the information was

Ja3dbrip                          Plea

1    obtained, to use the information in connection with the

2    rereviews that took place in March and April of 2016.  I think

3    a proper allocution will acknowledge that in March and April of

4    2016, Mr. Britt understood the information was confidential.

5    That was, of course, why they actually acted on it.  Without

6    that, I think we have a problem.

7              MR. STERN:  Your Honor, the Indictment charges an

8    ongoing conspiracy that spans years.  And whatever Mr. Britt's

9    state of mind was in March of 2016, when he first learned of

10   the information, it is clear that at no time did anybody take

11   him to report the information to the PCAOB.  The government

12   alleges that it was used to improve inspection results

13   throughout the 2016 inspection cycle, and if at any point

14   during -- we believe that if at any point during that time

15   Mr. Britt realized the information was in fact confidential

16   PCAOB information when he used it, or did not report it, that

17   is more than a sufficient allocution.

18             THE COURT:  What was the timing of the inspection

19   cycle?  Remind me.

20             MR. STERN:  The inspection cycle began in roughly

21   April of '16 and went all the way through the end of 2016.

22             As your Honor -- as the Court may recall, the 2016

23   inspection reports were not even published until January of

24   this year.

25             THE COURT:  So, I mean, what we're dealing with is

1   what's the legal effect of a situation where he received

2   information from Brian Sweet about where the inspections were

3   going to be taking place and he didn't know one way or another

4   whether it was real or if it was just fanciful or, you know,

5   whatever, but he and others did take steps to review the

6   workpapers on those audits, which gives rise to a suspicion

7   that he thought it was really confidential information, I would

8   think, but he didn't really know until June, when the actual

9   inspections started lining up with the ones that they had been

10  given the heads up about.

11           MR. STERN:  That is absolutely right, your Honor.

12           THE COURT:  And the question is, is that within the

13  instructions I gave about the conspiracy to commit wire fraud?

14           MR. STERN:  And we believe it is, your Honor.

15           MS. ESTES:  Your Honor, if we could take a short

16  break?

17           THE COURT:  Yes.

18           MS. ESTES:  I think we would prefer to consult with

19  our Appeals Unit.

20           THE COURT:  Why don't we take -- we will take ten

21  minutes.

22           (Recess)

23           MS. GLAVIN:  Thank you, your Honor.

24           Mr. Britt has an additional factual statement.

25           THE COURT:  OK.  Mr. Britt.

Ja3dbrip                        Plea

1        THE DEFENDANT:  In January of 2017, Brian Sweet again

2   provided us with information that he said came from someone at

3   the PCAOB.  This time he referred to it as a pre-ballot list of

4   clients to be inspected.

5        THE COURT:  A pre?

6        THE DEFENDANT:  A pre-ballot list.

7        THE COURT:  Pre-ballot?

8        THE DEFENDANT:  Ballot, yes.  That is what I was

9   talking about.

10       I knew that this information was confidential PCAOB

11  information.  Based on this information, I was instructed by

12  Tom Whittle to assign resources to provide assistance to the

13  audit team of a client on that list and I did so.

14       MS. ESTES:  Your Honor, we just ask that your Honor

15  confirm with the defendant if he knew that the purpose of doing

16  so was to defraud the PCAOB.

17       MR. STERN:  Your Honor, based on the instructions you

18  provided, it is pretty clear that Mr. Britt only needed to act

19  with a wrongful purpose, and I think he has allocuted more than

20  sufficiently to that.

21       THE COURT:  Did you understand that the purpose of

22  using and taking action on that information in 2017 was to use

23  information that you knew was confidential and that the PCAOB

24  was not supposed to be using?

25       THE DEFENDANT:  Yes, your Honor.

Ja3dbrip                    Plea

1          THE COURT:  OK.  I'm not sure that defrauding the

2    PCAOB adds anything in terms of how I understand the legal

3    meaning of that.

4          MS. ESTES:  I think that is fine, your Honor.

5          THE COURT:  OK.  Do you think that there is any more

6    inquiry necessary from the government?

7          MS. ESTES:  Your Honor, I think that is sufficient

8    from our perspective.

9          THE COURT:  OK.  And, defense counsel, do you think

10   that there is a sufficient factual basis for the guilty plea?

11         MR. STERN:  We do, your Honor.

12         THE COURT:  OK.  Let me just ask, I just want to be

13   sure on what, if any -- what waivers there are in the plea

14   agreement so that everyone is on the same page.

15         I mentioned what the waiver is with respect to a

16   sentence.  What is the parties' understanding of any right to

17   appeal the conviction?  Is there any right to appeal the

18   conviction?

19         MS. ESTES:  No, your Honor.

20         And, your Honor, just to clarify, based on the

21   statements in the beginning, I know that Mr. Stern referenced

22   your Honor's rulings with respect to Middendorf and Wada after

23   their post-trial motions.  We just would like to make clear

24   that if Mr. Britt had been at trial, he could have made

25   post-trial motions and preserved any of those issues, but, you

Ja3dbrip                    Plea

1   know, from our perspective, since he is pleading guilty, he has

2   not -- he cannot preserve those sort of issues.

3          MR. STERN:  We understand that Mr. Britt is waiving a

4   direct appeal of conviction.

5          THE COURT:  Right.  But your view is that if --

6   depending on what the Second Circuit says about the various

7   legal issues that Mr. Middendorf is waiving, you might have a

8   2255 argument; is that a possibility?

9          MR. STERN:  We may move to vacate, your Honor.

10          THE COURT:  You may move to vacate, OK.

11          And I'll have to decide what has been waived based on

12   the plea agreement, I gather, or someone may have to decide?

13          MR. STERN:  Absolutely, your Honor.

14          THE COURT:  Understood.

15          Is there anything else you all wanted to say about

16   that?

17          MS. ESTES:  Not on the waiver point, your Honor.  I

18   just -- back to the elements, I just wanted to make clear that

19   in connection with 2017, wires were used in connection with I

20   think the discussions with Mr. Whittle.  There would have been

21   emails or phone calls.  If the defendant could just confirm

22   that?

23          THE DEFENDANT:  I made phone calls to organize the

24   resources.

25          THE COURT:  You made phone calls?

Ja3dbrip                    Plea

1              THE DEFENDANT:  Phone calls, yes.

2              THE COURT:  In connection --

3              THE DEFENDANT:  In connection with this, yes.

4              THE COURT:  With what you described in 2017 with using

5    the information along with Mr. Whittle?

6              THE DEFENDANT:  Yes.  Yes, your Honor.

7              THE COURT:  Do you think that is sufficient?

8              MS. ESTES:  Yes, your Honor.

9              THE COURT:  OK.  And does defense counsel think any

10   inquiry is appropriate or necessary?

11             MR. STERN:  No, your Honor.

12             THE COURT:  OK.  All right.

13             Mr. Britt, since you acknowledge that you are in fact

14   guilty as charged in Count Two of the Indictment, and since I

15   am satisfied that you know your rights, including your right to

16   go to trial, and that you are aware of the consequences of your

17   plea, including the sentence which may be imposed, I find that

18   you are voluntarily pleading guilty, and I accept your guilty

19   plea and enter a judgment of guilty on Count Two to which you

20   have pleaded guilty.

21             Now, I will set a date for sentencing.  Usually we set

22   sentencing about three-and-a-half months out to allow

23   sufficient time for the presentence report to be prepared.  Is

24   that fine?

25             MR. STERN:  If I may, your Honor?

Ja3dbrip                          Plea

1          THE COURT:  Sure.

2          MR. STERN:  Given the hash consequences that may flow

3    to Mr. Britt incident to this plea, as I think your Honor just

4    became aware, Mr. Britt is not a U.S. citizen, and the

5    consequences of this are almost certain deportation.  And as a

6    result of that, in an ideal world, I would be here asking you

7    to defer sentencing until after a Second Circuit ruling in

8    Mr. Middendorf's appeal.  I realize that is extraordinary and I

9    am not going to ask for that.

10          That said, we do respectfully request that his

11   sentencing be set for ten months to a year because there are a

12   number of reasons that justify this result.  As a starting

13   point, the result is permanent deportation and the 30-year life

14   in the United States that Mr. Britt and his wife are going to

15   have to undo.  His wife currently has no citizenship in

16   Australia, not even legal residence, and there is a whole

17   process that they are going to have to figure out with respect

18   to that.  They have college-aged children whose education and

19   future are going to have to be sorted out.  There is real

20   property that is going to have to be disposed of in

21   Connecticut.  And as the Court can imagine, one can't do that

22   in the winter without significant financial penalty and

23   hardship.  There are likely to be tax consequences associated

24   with his retirement because the Australian tax system is

25   different than the U.S. tax system.

Ja3dbrip                     Plea

1          And most importantly, as the Court is well aware,

2     Mr. Britt has had significant health issues and challenges.

3     And it is going to take some time to figure out, one, while he

4     is continuing to see doctors here, how he obtains health

5     coverage and insurance in Australia and how he transfers and

6     how he finds a physician in Australia that is capable of

7     providing him the kind of care that he is receiving that the

8     Court is aware of.

9          I think for all of those reasons it is going to take

10    quite a bit of time for him to transition and prepare for the

11    next phase of his life, and we would respectfully request that

12    sentencing be set ten months to a year out.

13          THE COURT:  Counsel.

14          MS. ESTES:  Your Honor, we'd object to that.  We

15    wouldn't mind, for instance, a delay of five months, or

16    something like that, so that Mr. Britt can get his finances and

17    everything in order.  But we believe a delay of ten months to a

18    year is simply an effort to wait out the Second Circuit, see if

19    there is something favorable, and then, you know, do what he

20    can to maybe withdraw his plea here.

21          So under those circumstances, your Honor, we think if

22    Mr. Britt wants the benefit of pleading guilty and accepting

23    responsibility, he needs to proceed to sentencing as a normal

24    defendant would.

25          THE COURT:  Well, I think we can do something like six

Ja3dbrip                    Plea

1   months, which will be a fair amount of time.  The Second

2   Circuit, I don't know that ten months or twelve months is going

3   to be enough for the Circuit anyway, frankly.  But I am fine

4   with six or seven months.  So, why don't we look at that.

5          That puts us in April.  Would April -- Friday,

6   April 17th, work?

7          (Pause)

8          MR. STERN:  Your Honor, is there any way in which we

9   could put it off until May?  Because the house -- Mr. Britt is

10  taking the lead in selling the Connecticut property, and we

11  realistically just don't see how that will be accomplished by

12  April.  And depending upon the sentence of this Court, it could

13  impose an undue hardship on his wife to deal with matters that

14  he is better equipped to handle.

15         THE COURT:  OK.  How about May 8th, is that fine?

16         MR. STERN:  Fine, your Honor.

17         THE COURT:  Is that OK with the government?

18         MS. ESTES:  Yes, your Honor.

19         THE COURT:  OK.  May 8th at 11 a.m. will be sentencing

20  here in this court.  Written submissions on behalf of the

21  defendant will be due two weeks before that, which is

22  April 24th, and government submissions one week before, which

23  is May 1st.  Sentencing May 8th, 11 a.m.

24         The present bond will be continued to the date of

25  sentence.

Ja3dbrip                        Plea

1           So, Mr. Britt, please make sure you continue to comply

2      with all conditions for your pretrial release to the date of

3      sentencing, and you must be in the courtroom on the date and

4      time that I set for sentencing.  It's a separate crime if you

5      don't show up for sentencing, of course.

6           And anything further?

7           MS. ESTES:  No, your Honor.

8           MR. STERN:  No, your Honor.

9           THE COURT:  OK.  Thank you.  We are adjourned.

10           (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25