UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :

UNITED STATES OF AMERICA
                                                      :

      - v. -

                                                      :      18 Cr. 36 (JPO)

DAVID BRITT,
                                                      :

          Defendant.
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


                                                                  AUDREY STRAUSS
                                                                  Acting United States Attorney
                                                                  Southern District of New York
                                                                  One St. Andrew's Plaza
                                                                  New York, New York 10007


Jordan Estes
Rebecca Mermelstein
Margaret Graham
Martin Bell
Assistant United States Attorneys

      - Of Counsel -

The Government respectfully submits this memorandum in connection with the sentencing of defendant David Britt, which is scheduled for September 23, 2020. On October 3, 2019, Britt pleaded guilty to one count of conspiracy to commit wire fraud, pursuant to a plea agreement that included a stipulated Guidelines range of 27 to 33 months' imprisonment.

As this Court has recognized, the criminal conduct here was serious. As the Court noted during a previous sentencing, Britt and his co-conspirators' conduct "corrupt[ed]" and "compromised" the PCAOB's regulatory process, which was established "to ensure that audits of public companies are done accurately and independently," and which "is supposed to function with independence and integrity." (Middendorf Sent. Tr. 25-26). Britt and his co-conspirators "cheat[ed] . . . to give their company a leg up in the process." (*Id.* at 26-27). The conspirators' conduct was also serious because "it involved the taking and use of confidential information, the PCAOB's work product," resulting in a loss to the PCAOB of "hundreds of thousands of dollars in employee time and resources." (*Id.* at 26).

Britt was a full and willing participant in this conduct. During the relevant period, he was a KPMG audit partner and the co-head of the Banking and Capital Markets Group. After receiving the confidential PCAOB information, Britt used his position of authority to orchestrate "stealth" re-reviews of banking audits that he knew would be inspected by the Public Company Accounting Oversight Board ("PCAOB"), thus corrupting a process that should have been undertaken with truthfulness and integrity. Britt also went to great lengths to cover up the stealth re-reviews: he falsely represented to KPMG partners that the re-reviews were being undertaken in connection with an existing monitoring program, and he even told one partner, who knew Britt had obtained confidential PCAOB information, to "keep his mouth shut."

Given the seriousness of the criminal conduct, and Britt's role in the scheme, the

Government submits that a significant sentence is appropriate. However, the Government acknowledges that the applicable Section 3553(a) factors noted by defense counsel in their submission, including Britt's history and characteristics, and the below-Guidelines sentences that Britt's codefendants received, weigh in favor of a below Guidelines sentence here.

**I. Offense Conduct**

In 2015, KPMG recruited and hired Brian Sweet, an Associate Director at the PCAOB, to work as an audit partner in KPMG's Inspections Group. During Sweet's first week at KPMG, David Middendorf repeatedly asked Sweet to share confidential PCAOB inspection information that Sweet already had, as well as to share any confidential information that Sweet might receive in the future, implying that Sweet's paycheck depended on it. (Trial Tr. 761-65, 772-74, 1856-61). Sweet then began sharing information with Middendorf, Thomas Whittle, David Britt, and others at KPMG.

On March 28, 2016, Jeffrey Wada, a PCAOB employee, shared with Cynthia Holder, another PCAOB employee, the confidential list of PCAOB's 2016 inspection selections for KPMG's banking clients (the "2016 List"), which Holder promptly passed to Sweet for use by KPMG. (GX 953, 1362, 1443; Tr. 856). Middendorf, Whittle, Britt, and Sweet then agreed to launch a stealth program to "re-review" the audits that had been selected. (Tr. 880-82). In order to cover up their illicit conduct, Britt gave other KPMG engagement partners a false explanation for the re-reviews. (GX 954, Tr. 886-88). Whittle and Britt also launched re-reviews with respect to their internal inspections, to make sure the results did not vary too much and raise suspicions. (Tr. 1902-03). The stealth re-review program allowed KPMG to double-check its audit work, strengthen its work papers, and, in some cases, identify deficiencies or perform new audit work that had not been done during the live audit.

Also in March 2016, Britt told an audit partner whose engagement was on the 2016 List that his engagement would be inspected by the PCAOB. (GX 941, Tr. 894). Britt then told that partner that he needed to "keep his mouth shut." (*Id.*).

On January 9, 2017, Wada left Holder a voicemail: "Hey Cindy, it's Jeff. Um, I have the list, and I'd certainly be— So, um, grocery list. Anyway, feel free to give me a call back." (GX 1402). Based on documents on the PCAOB server (DX 1381, GX 92, 80, 89), Wada obtained and disclosed to KPMG the confidential preliminary inspection list for 2017 (the "Preliminary 2017 List"). (GX 655). That night, Wada sent his resume to Holder in search of a job at KPMG. (GX 1073). Sweet shared the Preliminary 2017 List with Whittle and Britt, and it was then passed on to Middendorf. (GX 655, 656-A, 1362, Tr. 998-1005). Once again, KPMG acted on the confidential PCAOB information. Whittle and Middendorf decided to and did devote additional resources to engagements on the Preliminary 2017 List, in light of their presence on the list. (Tr. 1921-24).

On February 2, 2017, Wada texted Holder "Okay, I have the grocery list," referring to the finalized 2017 PCAOB inspection list of KPMG inspections ("Final 2017 List"), and acknowledged its utility to Holder and KPMG: "All the things you'll need for the year." (GX 1428). The next day, Wada shared with Holder the Final 2017 List. Once again, Wada passed the information to Sweet, who shared it with Middendorf, Whittle, and Britt. (Tr. 1059-60).

## II. Applicable Law

The Guidelines are no longer mandatory, but they continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005); *see also United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that *Booker/Fanfan* and section

3

3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "anchor[s]" the district court's discretion. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh v. United States*, 569, U.S. 530, 549 (2013)) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) further directs the Court "in determining the particular sentence to impose" to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

In light of *Booker*, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. *See Crosby*, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled

4

to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Id*. at 112; *see also United States v. Corsey*, 723 F.3d 366, 375 (2d Cir. 2013) ("Even in cases where courts depart or impose a non-Guidelines sentence, the Guidelines range sets an important benchmark against which to measure an appropriate sentence."). Second, the Court must consider whether a departure from that Guidelines range is appropriate. *See Crosby*, 397 F.3d at 112. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. *Id.* at 113. In so doing, it is entirely proper for a judge to take into consideration his or her own sense of what is a fair and just sentence under all the circumstances. *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

### III. Discussion

In light of the previous sentences handed down in this case, as well as the history and characteristics of the defendant, the Government respectfully submits that a significant sentence, but one below the Stipulated Guidelines Range of 27 to 33 months' imprisonment, would be a fair and appropriate sentence in this matter.

As discussed above, the offense is incredibly serious. While serving as a high-ranking executive at KPMG, Britt and his co-conspirators perpetrated a fraud that caused the PCAOB to suffer hundreds of thousands of dollars in lost employee time. Even more significantly, the fraudulent scheme undermined the PCAOB's role as a watchdog, tasked with the important job of overseeing auditors and ensuring that auditors could be counted on to accurately review the financial statements of public companies. As the Court knows, the PCAOB was created by Congress in the wake of the Enron and Arthur Andersen scandals, in an effort to improve oversight of auditors and restore investor confidence in the financial markets. The PCAOB engages in that oversight through its inspections process, which is an effort to measure audit quality at firms like

KPMG. Here, Britt's actions interfered with the inspections process and thus the mission of the PCAOB in overseeing audits of public companies.

Moreover, Britt's role at KPMG enhances the gravity of his conduct. Throughout the fraudulent scheme, Britt was the co-head of KPMG's banking and capital markets group within KPMG's audit group. Given his role in banking, Britt could have stopped the 2016 re-reviews on the banking audits had he so chosen. He could have told Whittle and Sweet that acting on confidential PCAOB information was wrong. But he did not. Instead, he sent out an email to other KPMG partners with a false reason for the re-reviews, to hide their true purpose and his misconduct. Britt's actions corrupted others at KPMG and caused pervasive wrongdoing. As such, his conduct was incredibly serious and warrants a significant sentence.

Still, the Court has sentenced Britt's co-defendants, who were arguably more culpable than Britt, to substantially less than Guidelines sentences. Middendorf, who, as head of the National Office, was higher-ranking than Britt at KPMG, received a sentence of one year and one day's imprisonment. Wada, who set the scheme in motion by providing the confidential PCAOB information, received a sentence of nine months' imprisonment. And Holder, who was a former FBI agent, and who destroyed evidence in an effort to cover-up the fraudulent scheme, received a sentence of eight months' imprisonment. In light of the below-Guidelines sentences of Britt's co-defendants, two of whom were convicted after trial, the Government submits that a below-Guidelines sentence is also appropriate for Britt here. This is particularly true in light of the Section 3553(a) factors outlined at length in the defense sentencing submission.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should impose a significant, but below-Guidelines, sentence on the defendant.

Dated: New York, New York
September 15, 2020

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: _____/s/_____
Jordan Estes
Rebecca Mermelstein
Margaret Graham
Martin Bell
Assistant United States Attorneys
(212) 637-2543/2360/2923/2463